UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

NEW YORK LIFE INSURANCE COMPANY,

                        Plaintiff,                  **DECISION AND ORDER**

    v.

                                                      1:19-CV-00669 EAW

CHERYLYNN OLDHAM and GUS
OLDHAM,

                        Defendants.
_____

Plaintiff New York Life Insurance Company ("NYLIC") commenced the instant action in interpleader on May 22, 2019. (Dkt. 1). Presently before the Court is a motion for summary judgment filed by defendant Cherylynn Oldham ("Cherylynn Oldham") seeking recovery of the interpleader funds on the ground that defendant Gus Oldham ("Gus Oldham") was responsible for the death of the decedent, barring him from recovery of the proceeds. (Dkt. 53). Gus Oldham opposes the motion. For the following reasons, the motion is denied.

## BACKGROUND

**I.    Factual Background**

The following facts are taken from the complaint (Dkt. 1), Cherylynn Oldham's Statement of Undisputed Material Facts submitted in support of her motion for summary judgment (Dkt. 55), and the exhibits submitted by the parties. Gus Oldham did not submit an Opposing Statement of Material Facts, and therefore the factual statements contained in Cherylynn Oldham's statement may be "deemed admitted for purposes of the motion" if they are supported by admissible evidence in the record. *See* L. R. Civ. P. 56(a)(2) ("Each numbered

paragraph in the moving party's statement of material facts may be deemed admitted for purposes of the motion unless it is specifically controverted by a correspondingly numbered paragraph in [an] opposing statement."). Although a district court should not deem unopposed facts admitted when those facts are unsupported by the record, *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73-74 (2d Cir. 2001), a district court has discretion to deem facts admitted for lack of compliance with its local rules, *see N.Y. State Teamsters Conference Pension & Ret. Fund v. Express Servs., Inc.*, 426 F.3d 640, 648-49 (2d Cir. 2005) (it was within district court's discretion to deem the moving party's statement of material facts admitted where the opposing party "offered mostly conclusory denials" and "failed to include any record citations" contrary to the district's local rules). The Court has accepted Cherylynn Oldham's factual assertions to the extent they are supported by the evidence of record and otherwise not directly controverted by facts and exhibits in the record. Where a fact is disputed, the Court has noted the same.

Cherylynn Oldham and Gus Oldham are the children of the decedent, Cheneta Oldham ("Cheneta Oldham"). (Dkt. 55 at ¶¶ 1, 2). Cheneta Oldham died on December 23, 2018, in the home where she lived with Gus Oldham, as the result of multiple gunshot wounds. (*Id.* at ¶¶ 3, 4, 11). Cherylynn Oldham alleges that Gus Oldham killed Cheneta Oldham, (*id.* at ¶ 3), a fact which Gus Oldham denies.

Three days before Cheneta Oldham died, she texted Cherylynn Oldham that she was putting Gus Oldham out of the house. (*Id.* at ¶ 5; Dkt. 55-6). On December 23, 2018, Cherylynn Oldham tried calling her mother and also texted asking her mother to call her back, but received

no response. (Dkt. 55 at ¶ 6). When Cherylynn Oldham called Gus Oldham and asked to speak to Cheneta Oldham, Gus Oldham kept saying, "She's lit up. She's lit up."[1] (Dkt. 55-1 at 1).

When the police arrived at the home, Gus Oldham was barricaded in his bedroom. (Dkt. 55 at ¶ 13; Dkt. 55-8). He had with him a semi-automatic rifle, which subsequent testing demonstrated was the gun that had been used to kill Cheneta Oldham. (Dkt. 55 at ¶¶ 15, 16). Gus Oldham was taken into custody by the Buffalo Police Department and agreed to an interview with a Buffalo Police Detective. (*Id.* at ¶¶ 18, 20). Cherylynn Oldham alleges Gus Oldham confessed to killing their mother in the interview. (*Id.* at ¶ 21). A review of the transcript of the interview reflects that while at certain points during the interview Gus Oldham arguably admitted to shooting Cheneta Oldham, he also repeatedly denied having killed Cheneta Oldham. (Dkt. 55-3).

On January 19, 2018, Gus Oldham was found to be incapacitated by the Office of Mental Health and unfit for trial. (Dkt. 55 at ¶ 22; *see* Dkt. 55-13). On February 19, 2019, an Erie County Grand Jury indicted Gus Oldham on a charge of murder in the second degree for the death of Cheneta Oldham. (*Id.* at ¶ 23).

---

[1]   Cherylynn Oldham's Statement of Facts indicates that Cherylynn Oldham spoke to Gus Oldham when he "finally answered his mother's phone." (Dkt. 55 at ¶ 7). But in the sworn statement Cherylynn Oldham gave to the Buffalo Police Department on December 28, 2018, Cherylynn Oldham stated that she called their dad to get Gus Oldham's number and called Gus Oldham at his own number. (Dkt. 55-1). In addition, in her Statement of Facts, Cherylynn Oldham states that in that phone call, Gus Oldham "told Cherylynn to stop calling their mother because she was dead. He had killed her." (Dkt. 55 at ¶ 8). But in her sworn statement taken days after Cheneta Oldham's death, when asked if Gus Oldham told Cherylynn Oldham that he had killed their mom, Cherylynn Oldham replied, "[h]e kept saying, 'She lit up. She lit up.' I have no idea what that means." (Dkt. 55-1 at 3).

Prior to her death, Cheneta Oldham took out the insurance policies at issue. (*Id*. at ¶ 24). Cherylynn Oldham and Gus Oldham were named as beneficiaries. (*Id.* at ¶ 25). Cherylynn Oldham received one half of the amount payable under the policies and the other half is at issue in this litigation. (*Id.* at ¶ 27).

## II.   Procedural Background

NYLIC commenced the instant action in interpleader on May 22, 2019. (Dkt. 1). On September 5, 2019, an Order for Deposit of Interpleader Funds and Related Relief (Dkt. 11) was entered that instructed NYLIC to deposit with the Clerk of Court the sum of $10,000.00, plus applicable interest if any, which became due as a result of the death of Cheneta Oldham in connection with AARP Permanent Life Policy No. A9184693 and AARP Permanent Life Policy No. A9215986 (together, the "Policies"). (*Id*. at 1). NYLIC deposited the Interpleader Funds as directed and on February 4, 2020, NYLIC was discharged from liability. (Dkt. 20). Following the appointment of counsel, Cherylynn Oldham filed an amended answer and crossclaim against Gus Oldham. (Dkt. 48). Gus Oldham filed an answer to the complaint and crossclaim, denying Cherylynn Oldham's allegations and asserting his right to the recovery of the insurance proceeds. (Dkt. 49).

Presently before the Court is a motion for summary judgment filed by Cherylynn Oldham on July 30, 2021. (Dkt. 53). On August 2, 2021, Gus Oldham filed his opposition to the motion (Dkt. 56; Dkt. 57), and on September 7, 2021, Cherylynn Oldham filed her reply (Dkt. 59; Dkt. 60). For the following reasons, the motion is denied.

## DISCUSSION

**I.     Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the Court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact. . . ." *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654 F.3d at 358. Indeed, "the mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

## II.     The Slayer Rule

"Under New York law, 'one cannot take property by inheritance or will from an ancestor or benefactor whom he has murdered.'" *Hartford Life Ins. Co. v. Pottorff*, No. 5:13-CV-77 MAD/DEP, 2014 WL 1393751, at *4 (N.D.N.Y. Apr. 9, 2014) (quoting *Riggs v. Palmer*, 115 N.Y. 506, 513 (1889)); *see also In re Est. of Alexis*, 14 Misc. 3d 379, 380 (Sur. Ct. 2006) ("It is well established law that one who takes the life of another should not be permitted to profit from his own wrong and shall be barred from inheriting from the person slain."); *In re Ests. of Covert*, 97 N.Y.2d 68, 74 (2001) (noting that the law prevents "wrongdoers from acquiring a property interest, or otherwise profiting from their own wrongdoing").  This rule unequivocally applies to the distribution of life insurance benefits. *Prudential Ins. Co. of Am. v. Govel*, No. 116CV0297 (LEK/DJS), 2017 WL 2455106, at *4 (N.D.N.Y. June 6, 2017) ("New York's slayer rule applies to life insurance proceeds, so that '[a] beneficiary of a life insurance policy forfeits his or her right to the proceeds if . . . she murders or feloniously causes the death of the insured.'" (quoting *Ganelina v. Pub. Adm'r*, 963 N.Y.S.2d 545, 550 (Sup. Ct. 2013)); *Hartford Life Ins. Co.*, 2014 WL 1393751, at *4 ("Courts have long applied the slayer rule to prevent killers from receiving their victims' life insurance benefits."); *John Hancock Life Ins. Co. v. Perchikov*, No. 04 CV 98 (NG) (MDG), 2010 WL 185007, at *2 (E.D.N.Y. Jan. 15, 2010) ("Under New York law, a life insurance beneficiary who kills the insured is disqualified from collecting the insured's life insurance proceeds.").

A criminal conviction provides conclusive proof that a party was responsible for the death of another. *Hartford Life Ins. Co.*, 2014 WL 1393751, at *5 ("Under New York law, '[a] criminal conviction, whether by plea or after trial, is conclusive proof of the same facts in a subsequent civil proceeding and collateral estoppel bars a defendant from relitigating those issues that were raised, or may have been raised, in the criminal proceeding.'" (quoting *In re Estate of Savage*, 175 Misc.2d 880, 882 (Sur. Ct. 1998)). "Absent a conviction, however, there can be no forfeiture unless it is proven [by a preponderance of the evidence] that a person acted recklessly or intentionally in causing the victim's death, not that the person acted negligently." *Prudential Ins. Co. of Am.*, 2017 WL 2455106, at *5 (quoting *In re Karp*, No. 2005-3737, 2011 WL 5027174, at *3 (Sur. Ct. Sept. 22, 2011)).

Cherylynn Oldham argues that Gus Oldham may not benefit from killing his mother and recover life insurance proceeds for a death he caused. While Cherylynn contends that there is no dispute that Gus Oldham killed their mother, (Dkt. 54 at 4), when taking the facts in the light most favorable to Gus Oldham, as it must, the Court disagrees. Gus Oldham has not been convicted of committing the murder of Cheneta Oldham, nor does the grand jury indictment alone constitute sufficient proof for Cherylynn Oldham to obtain summary judgment. Issues of fact preclude the Court from finding at this stage of the proceedings that Cherylynn Oldham has proven by a preponderance of the evidence that Gus Oldham acted recklessly or intentionally to cause the death of Cheneta Oldham in a manner that would warrant application of the slayer rule as a matter of law.

Moreover, in addition to the lack of a criminal conviction, here, as noted, Gus Oldham has been adjudicated an incapacitated person. Some courts have held the slayer rule

inapplicable in instances where a party was found not guilty of murder by reason of insanity. *See Union Sec. Life Ins. Co. of New York v. JJG-1994*, No. 1:10-CV-00369 LEK, 2011 WL 3737277, at *4 (N.D.N.Y. Aug. 24, 2011) ("The only exception to New York's slayer rule applies where the killer did not know at the time the nature and quality of his act."); *In re Est. of Macaro*, 182 Misc. 2d 625, 630 n.3 (Sur. Ct. 1999) ("Notably, such forfeiture does not occur where the killing was accidental, in self-defense . . ., or where the killer acted under a disability sufficient to negate a culpable mental state, such as insanity." (citations omitted)); *In re Fitzsimmon's Est.*, 64 Misc. 2d 622, 624 (Sur. Ct. 1970) ("It is accordingly the decision of this Court that by reason of his insanity at the time of the alleged killing, George Fitzsimmons is exculpated from legal liability and is entitled to his distributive share in the estates of both his deceased mother and father."); *In re Wirth's Est.*, 59 Misc. 2d 300, 302-03 (Sur. Ct. 1969) (holding that because husband was found not guilty of murder of wife by reason of insanity, slayer rule did not preclude husband from taking distributive share of wife's estate); *but see In re Demesyeux*, 42 Misc. 3d 730, 739 (Sur. Ct. 2013) ("[A] person found not responsible for a crime due to mental disease or defect who has the ability to recognize that her conduct was morally wrong when undertaken shall not financially benefit from that action.").

      Because Gus Oldham has not been convicted in the death of Cheneta Oldham and has been adjudicated an incapacitated person, it would be premature to award summary judgment to Cherylynn Oldham on these facts. For all of these reasons, Cherylynn Oldham's motion for summary judgment is denied.

## CONCLUSION

For the reasons set forth above, the Court denies Cherylynn Oldham's motion for summary judgment. (Dkt. 53).

SO ORDERED.

_____
ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: February 1, 2022
       Rochester, New York